Next case on our call this morning is case number 108615 In re the Detention of Tommy O. Hardin Could you turn that light down or on? That light is shining in our eyes. Agenda number two. It's shining right here. Thank you. Thank you Mr. Chief Justice and may it please the court. My name is Neil Levine. I represent the appellant Tommy O. Hardin in this matter. This case deals with a sexually violent person petition, an SVP petition. Or more accurately, what happens when the respondent in an SVP case during a probable cause hearing actually wins the probable cause hearing? What happens then? In our situation, the trial court, DuPage County, ruled that there was no probable cause to believe that Tommy Hardin was an SVP and dismissed the petition. This appeal has now followed. There are two chief issues to be addressed here. One deals with jurisdiction. The other, if we get past the jurisdictional issues, deals with the merits of the actual probable cause hearing and how much deference the appellate court was to have given the trial court in the trial court's ruling of no probable cause. If we begin with the jurisdictional issue it really comes down to if the state loses at an SVP petition, can they appeal? Can the state appeal an adverse ruling in an SVP case? It's not obvious. It's long been known that SVP cases are meant to be civil, governed under civil rules. And in fact, in the Illinois SVP Act, Section 20 specifically says that civil rules shall apply except as otherwise provided in this Act, meaning that we have to read the Act fully to determine the intent of the legislature. Some parts of the Act were meant to be criminal, of course, beyond a reasonable doubt. Respondents are right to remain silent, things like that. Were civil rules to apply, in which case the state could appeal a final judgment under 301? Or were criminal rules to apply, in which case the state couldn't appeal at all? If we look at the actual text of the SVP Act, there were certain provisions in it that make us wonder, make us believe that the legislature intended that no state appeal would be taken. For example, Section 35G of the Act makes reference to the fact that a finding that a respondent is a sexually violent person is interlocutory to the ultimate dispositional order and is reviewable on appeal. It emphasizes, it's really the only part of the Act that deals with appeals, but it emphasizes that the respondent has the right to appeal. So there's nothing anywhere else in the Act about whether the state can appeal anywhere. If we look at Section 30C, dealing with probable cause hearings, the text of the Act points out that if the court were to find that the respondent, that there's no probable cause to believe that the respondent is an SVP, the court shall dismiss the petition. This is absolute language. It doesn't say shall dismiss the petition, but maybe this can be staged or to a state's right of appeal or anything of the sort. Section 35F, along the same lines, points out that if the, at the conclusion of the trial, if the court or the jury has found that the respondent is not an SVP, again, the court shall dismiss the petition and even emphasizes, shall release the respondent from custody. But counsel, I think you've already noted that Section 20 of the Act provides the proceedings under the Act, quote, shall be civil in nature and that the provisions of the Civil Practice Act shall apply. And the dismissal, why wouldn't an order of dismissal then in an SVP proceeding be appealable to the same extent as orders of dismissal in any other civil case? It's an interesting point, Justice Thomas. Maybe it is. But the problem with this is that if the state wanted to go for a stay, pardon me, the Act says nothing about stays. And what it really comes down to then is that the respondent, in effect, walks out the door. The state can then ask a reviewing court to state a lower court's ruling. But in the meantime, the respondent is out walking the streets. Certainly, the reviewing court might not issue a stay. And even if they do issue a stay, it's at the conclusion of notice to me, an opportunity to be heard, and so on. Through all this, this person who, at least from the point of view of the state, is sexually violent, that is substantially probable will commit acts of sexual violence in the future, he's just out doing his thing. This is why I am saying something so extreme to be overlooked in the statute can't be a coincidence. If the legislature had intended civil rules to apply on this point, we would expect some kind of a reference, even in a peripheral way, something, to account for the possibility that presumably someone really dangerous will be out just bopping around, just walking around, hoping that a reviewing court later grants a stay. It's based on this that I bring to the court's attention the issue, it's not obvious whether the state can appeal at all, whether the legislature actually intended that criminal rules would apply on this point, effectively barring a state appeal. If we get past this, though, there's still a jurisdictional issue. If the court were to conclude that 301 applies, that the legislature intended regular civil rules to apply, and that's fine, it just exchanges one problem for another, a more pointed problem inherent in this case. Accepting that the state can appeal a final judgment, can they appeal a finding of no probable cause? That's a little bit different than proceeding all the way through to the merits. I say no, they cannot. That a finding of no probable cause just isn't a final judgment. The only analog to this is it not final as far as the state is concerned? The state can't go any further to the trial if there's no probable cause, isn't that correct? I respectfully disagree, Justice Carmier. The only analog to this, in answer to Your Honor's question, by all accounts, the probable cause hearing in an SVP case is akin to a probable cause hearing in a criminal felony case, a preliminary examination. If the court in a pre-hearing in a criminal felony case were to find no probable cause, that doesn't end the case necessarily. The prosecutor can just, in effect, try again. Admittedly, this is How can the prosecutor try again when they have to file it at least 90 days before the person's released? Justice Gorman, there are two points in response to that. First, at least in our case, when the Attorney General is involved, they get an extra 30 days. They get the first 30 days of the MSR period in which they can file a petition. More importantly, when a petition gets filed, the running of MSR or parole automatically gets told. In our case, the prosecution filed the petition on day 89 of that 90-day window, that is one day before the respondent was to be released from IDLC. We had the SVP probable cause hearing some six weeks later. The court found no probable cause. That meant that because parole had been told, the prosecution had another 30 days starting right then and there if they had chosen to file a new petition. Well, they did not choose to. Now, I will concede the SVP Act doesn't say anywhere in its face that a successive petition can be filed. What do we do with 30C of the Act, which you already quoted? If the court determines that probable cause does not exist to believe that the person is a sexually violent person, the court shall dismiss the petition. Isn't an order dismissing the state's petition a final order? I don't believe so in this situation, Justice Thomas. I think that the state can just file a new petition. This is the same thing with the criminal pre-hearing. They can file something new. It has to be based on good faith. They have to be willing to present more evidence. But as far as that previous petition, the state's claim has been thrown out. What if they have no good faith basis to file anything separate, different than the petition that was dismissed? How can that possibly not be a final order? I respectfully disagree, Justice Thomas. In our case, there was more evidence that could have been presented. The court actually told the prosecution. In effect, I've heard no evidence about Mr. Hardin's disciplinary infractions, if any, in jail, his education, things that you should have presented if you had known about them, and in fact- Well, let me give you an analogy here. Please. Just because we've already determined that the provision says that the Civil Practice Act applies. If you're in a typical civil case, and there's a complaint that's filed, and that complaint is dismissed, and the judge says, I'll give you a chance to replead, and he says, no, I'm going to stand on this complaint, it's a dismissal order that's appealable, right? And even though there is the potential to file an amended complaint, the litigant can choose to stand on the complaint previously filed. Why would that not be analogous to this case? I think if they were to flat out say, we will not file anything more, maybe in such a situation, maybe that does make it final, I don't know. But it's not necessarily what happened here. In our situation, the trial court, and actually this did not make the briefs, but it is in the record, when the trial court dismissed, when the trial court found no probable cause, the trial court actually said, this is on page 115 of the record, quote, I am unable to make a finding of probable cause at this time, close quote. Now, the prosecutor never asked for leave to file an amended petition or an additional petition. The judge did not offer it in any other language other than at this time, but that's where it was left. Now- Did the judge thereafter dismiss the petition? The actual language does not, it's never said in the record, I will dismiss the petition. The judge just said, I can't make a finding of probable cause at this time. Mr. Harding can be remanded back to IDOC. The words dismissal of the petition never takes place, and actually the order that was drafted did not say that the petition is dismissed. I think that all parties, I was the trial counsel at the time, all parties assumed that the petition had been dismissed. We acted in that way, but it was never set on the record. If we go past the jurisdictional aspect of this, however, assuming that it's a final judgment, jurisdiction is proper, we still have the issue of how do we handle the merits of the probable cause hearing? This is something that has not been addressed really by this court at all in SVP jurisprudence. In our hearing, in our case, the state presented one expert, a psychologist, Dr. Quackenbush, who testified on direct that he had evaluated Mr. Hardin, and that in his opinion, Mr. Hardin suffered from paraphilia, not otherwise specified, and personality disorder, not otherwise specified. And that in his view, Mr. Hardin was substantially likely to re-offend, commit crimes of sexual violence in the future. That's what he said on direct. At the conclusion of cross-examination, the trial court actually said on the record that the doctor's opinions as to mental disorder and as to future dangerousness, those opinions crumbled, that was the word, crumbled. That the court, in essence, no longer credited the doctor's opinions. And actually said on the record that the only basis remaining to arguably sustain the petition, relevant to the petition, were Mr. Hardin's prior convictions. And we- What kind of evidence did they need? Well, they needed to show that Mr. Hardin had been convicted of sexually violent offense. And of course, we can see that. That Mr. Hardin suffered from some kind of a mental disorder. And that in light of that, because of that mental disorder, it was substantially probable to commit acts of sexual violence in the future. The court found that the doctor's opinions as to mental disorder and substantially probable were gone. That as a result of cross-examination, she no longer credited what the doctor had to say on those points. We were just left with convictions, and as the court ruled, mere convictions just are not enough, which actually leads to another issue. Section 35E of the act says that at a trial, which of course, admittedly the standard is beyond a reasonable doubt, it's not probable cause anymore. At a trial, convictions as a matter of law are not good enough to show the existence of a mental disorder beyond a reasonable doubt. The court implicitly used that statute at the probable cause hearing. Convictions aren't good enough at trial. They're not good enough now either, and found no probable cause. Now, it's not obvious. There's no case that says what exactly is probable cause in Illinois for purposes of an SVP proceeding. However, it's long been noted that the Illinois SVP Act and the Wisconsin SVP Act are really very similar. We cite the Wisconsin cases pretty frequently on the SVP jurisprudence. If we borrow the Wisconsin definition of probable cause, what they use in their SVP acts and try to apply it here, we still claim that there was no probable cause and that there was no error taking place in the trial court. The Wisconsin court holds, the state versus Watson, that for the state to sustain its petition at a probable cause hearing, they must establish a plausible account on each of the required elements. It's important to note that the state must establish the plausible account, not present a plausible account, not just put it forth on direct examination. They must establish it. It must withstand cross. I bring this up because the second district, when it reversed the lower court's ruling, said, in effect, probable cause was shown as a matter of law. And it put forth all the evidence that came forth in Dr. Quackenbush's direct examination. It did not put forth anything about what came forth on cross, other than its recitation of facts, but certainly not in its analysis. It did not say anything at all about the fact that the trial court, the trial judge, had found the cross so compelling and so crucial in its analysis. Well, that was error, in our opinion. It was error of the second district to do this, to just almost arbitrarily cast aside the trial court's view of the importance of cross-examination. So you're really arguing the appellate court wasn't sufficiently deferential to the trial court? I am arguing that, yes, Justice Garmon. That they should have been more deferential on that point, and on other points, too. The trial court felt, and actually said on the record, that she just didn't believe Dr. Quackenbush. The Wisconsin court says that credibility, that we're not supposed to delve, that's the word delve, into credibility during a probable cause hearing. Well, we didn't delve into credibility. At no point did I ask Dr. Quackenbush what his fee was for testifying, or whether he had prior convictions, or anything of the sort. But certainly, a witness's credibility is always in issue every time he or she testifies, without exception. Why have oaths? It has to be there. And the trial court was allowed to consider it. And if the trial court then felt that, in her words, Dr. Quackenbush applied a very mechanistic and subjective way of doing things, and did not credit his method, and did not credit his conclusions, there's nothing wrong with this. Well, counsel, if we were to agree with your argument and the trial court's argument, we would be saying that a recognized expert in the field, who based a review on documents, reasonably relied upon by experts in the field. I mean, you'd agree with that so far. I would. All right. Formed an opinion that respondent suffers from certain mental disorders that create a substantial likelihood of recidivism. That was his opinion, right? It was. All right. And respondent offered no evidence in contradiction to that conclusion, and we would have to say that that evidence, with no evidence counter to it, is not probable cause in this particular case. Isn't that the finding we'd have to make? Not necessarily, because those findings by the doctor, number one, they're not as a matter of law. Secondly, part of it must be subjective. There are dynamic risk assessments in which the doctor is allowed to deviate from the objective test that he has given. And this is where the court placed a great deal of emphasis, that the doctor didn't know many things that the doctor should know, such as disciplinary tickets, how Mr. Hardin had done in the eight years in prison. Did he have Playboy magazines in his cell? Things like this. How was he doing in school? What were his goals for the future? Doctor didn't know any of it. And the court felt that this was really very important, that the doctor had done a good faith objective analysis of Mr. Hardin. He should have known all these things to best give his opinion. The court was thereby left with the conclusion that all that's left here are convictions, which just aren't good enough. So it's true, I am saying that the second district should have deferred more to the trial court. Well, what was their standard of review? The manifest way of the evidence? They don't actually emphasize it. They just say that what came forth here as a matter of law, was suffice for probable cause, at least on direct examination. They say that the argument that we were making was, in effect, saying that there's no recent bad sexual acts over here, that everything took place in the past, and that's not good enough. See, my time is up, which was not the argument that we had been making at all. But that's how the second district characterized it. Thank you, your honors. Thank you. Thank you. Morning, your honors. Counsel. May it please the court. My name is Sherry Wong, and I'm an assistant attorney general here on behalf of the people of the state of Illinois. Your honors, this court should affirm the judgment of the appellate court for the following two reasons. First, Article 6, Section 6 of the Illinois Constitution and Supreme Court Rule 301 both authorize the people to appeal a final judgment in a proceeding under the SVP Act. And second, the people presented more than ample evidence to demonstrate probable cause that the respondent is a sexually violent person. Now, turning to the jurisdictional issue. Respondent argues that by reading the act as a whole, that demonstrates that the legislature intended to restrict the right to appeal to solely SVP respondents, but respondent's argument mistakenly assumes that the General Assembly's intent is a relevant consideration in determining whether the people have the right to appeal in an SVP proceeding. This court need look no further than Article 6, Section 6 of the Illinois Constitution and Illinois Supreme Court Rule 301, both of which authorize that every final judgment of a circuit court in a civil case is appealable as a matter of right to the appellate court. Respondent- Why should we assume that the opportunity for the state is permitted when the act doesn't actually say so? Well, your honor, the act says that proceedings under the act are to be civil in nature, and that the provisions of the civil practice law are to be applied unless otherwise specified. So what the General Assembly intended, and this is in fact consistent with Article 6, Section 6 of the Constitution and Supreme Court Rule 301, is that where the General Assembly says nothing about the right to appeal or whether or not stays are provided, that actually means that the General Assembly intended for the rules of the civil practice law to apply. And because there's nothing in the SVP Act which talks about appeals, that meant that the General Assembly intended for the rules of the civil practice law to apply. And the civil practice law states that appeals are to be taken as provided for in civil cases, which means that this Court's rules governing civil appeals and this Court's rules governing stays are going to govern proceedings under the SVP Act. So it is actually relevant that the General Assembly did not say anything in the act, because by not saying anything in the act, they meant for the rules of the civil practice law to apply. And Respondent agrees, and it's well settled that proceedings under the act are to be civil in nature. The United States Supreme Court in Kansas v. Hendricks and this Court in in-rate detention of Samuelson have both held that proceedings under the act are to be civil in nature, and the act itself says this. So the automatic default rule is to go to Article 6, Section 6 of the Illinois Constitution and Supreme Court Rule 301. And if this Court does indeed want to look to the intent of the General Assembly, it can look there, and the intent of the General Assembly is that the rules are to be applied as the civil practice law applies. Now, Respondent argues that there are certain sections of the act which demonstrates that the General Assembly intended to restrict the right to appeal to solely SVP respondents. And he cites to the certain criminal procedural protections that are available to SVP respondents, and argues that by giving SVP respondents these criminal procedural protections, that means that the General Assembly intended for criminal appeals rules to apply, and that means that people would not be able to appeal in an SVP case. But the United States Supreme Court in Hendricks and this Court in Samuelson have held that the fact that certain procedural protections that are given to criminal defendants are also given to SVP respondents, that does not transform what is a civil commitment proceeding into a criminal prosecution. Moreover, the sections to which Respondent cites don't actually show any intent from the legislature that the legislature intended for criminal appeals rules to apply. Respondent first cites Section 35G, but what the plain language of Section 35G actually states is that a finding that an individual is an SVP is interlocutory to the dispositional order that's entered under Section 40, but is nevertheless a reviewable issue on appeal once a proper appeal has been entered under a dispositional order. So what that section is saying is that the dispositional order is the final order from which an appeal can be taken, but that an SVP respondent can actually raise the underlying adjudication that he is an SVP in that appeal. It does not demonstrate any intent from the legislature that the legislature intended for criminal appeals rules to apply. May Respondent be kept in custody beyond his scheduled release date pending the State's appeal? It's possible. If the Respondent were to petition for a stay pending a petition for a stay pending the State's appeal and the appellate court or the trial court to grant that motion, then it is possible in that stay motion that the Respondent could be released during the pendency of the appeal. Is there any specific authority for that? Just the default rule of Supreme Court Rule 305, which allows for a stay during the pendency of a civil case while a party is appealing and also provides that while a stay is granted, a form of appeal bond or other form of security could be required, but that a stay could be granted. So in this case, after the trial court dismissed the petition, the trial court essentially ordered that the Respondent be released from the custody of DHS released from DHS into the custody of DOC so he was essentially free to go and then effectively dismiss the petition as was required under Section 30C. And the people then petitioned to have the proceeding stayed, but the trial court denied our motion to stay. So the Respondent was then released while the State took the appeal. So it is what's going on. Respondent further contends that even if the people cannot appeal a finding, even if the people can appeal a final judgment, they can't appeal the dismissal of an SVP petition because that finding can never be a final order. Now, a final order is one that terminates the litigation between the parties on the merits and fixes the rights of the parties so that there's essentially nothing left for the trial court to do in this case but execute the judgment. And in this case, when the trial court found no probable cause to proceed on the people's petition, as stated, the trial court ordered that the Respondent be released from DHS custody and into the custody of DOC so he could be placed on MSR. At that point, the people did not seek leave to amend the petition and the trial court did not grant the people leave to amend the petition. So effectively, there was nothing left for the trial court to do in this case but execute the judgment. So that was a final and appealable order because it was a dismissal with prejudice. Now, Respondent argues that these types of orders can never be final because the people could simply re-file the petition. And analogizes the SVP Act to a provision in the Code of Criminal Procedure. And that's an in-app comparison for a couple of reasons. First, as Respondent agrees, this is a civil case, so the rules of the civil practice law apply. And so a reference to the Code of Criminal Procedure is not a helpful comparison. And second, the Code of Criminal Procedure in that provision has a statute of limitations that is told when an information has been obtained and an indictment has been filed. Here, there's no similar statute of limitations that would be told. The SVP Act is different, is a different type of statute than what was created in the criminal rules. What the legislature created was a 120-day window in which the people could file an SVP petition. As Your Honors noted, the people can file the petition 90 days before the Respondent is set to be released onto MSR, or 30 days within the Respondent's placement onto MSR. And while there is a tolling provision, there is a section in the statute that says the filing of the SVP petition tolls the running of the Respondent's MSR period. What that means is the Respondent cannot serve his MSR period while the SVP proceeding is pending. But that does not necessarily mean that the filing of the petition tolls Respondent's placement onto MSR. So for example, in this case, for example, if the people have 120 days in which to file the petition, if we were to file the petition on day 119, which is 29 days after the Respondent was placed onto MSR, the filing of the petition would toll the running of the MSR period. So the Respondent could not serve his MSR period while the proceedings were pending, but it does not toll his placement onto MSR. So if the trial court were to dismiss the petition three days later, the petition would now have been, and the people wanted to refile, the people would not be able to refile because it would be filed on 122, the 122nd day after the petition was filed. And in this case, contrary to what the Respondent argued earlier, the people could not have refiled the petition after it was dismissed. The people did indeed file the petition one day before the Respondent was set to be released onto MSR, and the probable cause hearing was held about six weeks later, which would put Respondent past his 30-day placement onto MSR. So once the trial court dismissed the petition, and dismissed it with prejudice, so the people would not have been able to refile anyway, but assuming it had been dismissed without prejudice, the people would not have been able to refile because we would have been outside that 120-day statutory window. And as Your Honors noted, another consideration is also that the people may simply have no further evidence that we want to present in support of a successive petition. In this case, the evidence that we presented we felt was sufficient to satisfy probable cause to believe that the Respondent was a sexually violent person. And when the trial court dismissed the petition with prejudice, we believe that order was a final order and took an appeal from that order because that was the evidence that we wanted to rest our case on. There are no further questions on the jurisdictional issue. I'll turn to the merits of the probable cause issue. Respondent is correct that this Court has not addressed the precise standard that should be applied in an SVP case, but looking to the Wisconsin State Supreme Court's decision in State v. Watson is instructive. And applying that standard, the people presented more than ample evidence demonstrating that the Respondent here was demonstrating probable cause to believe that the Respondent was a sexually violent person. As the Watson Court held, the probable cause hearing is not to act as a full preliminary trial or a full evidentiary hearing. Rather, the people are to present a plausible account on each of the required elements to assure the trial court that there is a substantial basis for proceeding with the petition. Therefore, at the hearing, the people are required to establish a reasonable ground to believe the following three elements. That the Respondent has been sexually convicted of a sexually violent offense. Two, that he suffers from a mental disorder. And three, that he's dangerous to others because that mental disorder creates a substantial probability that he will commit future acts of sexual violence. At the probable cause hearing, we presented the testimony of Dr. Quackenbush, who relied on numerous pieces of evidence in coming to his conclusion that the Respondent was a sexually violent person. Testified that he reviewed the Respondent's master file, which contained documents reasonably relied upon by experts in the field. He relied on his two-hour interview that he conducted with the Respondent that was conducted just recently before the probable cause hearing, in which the Respondent was still attempting to displace culpability for his offenses onto the victims, in which the Respondent was still refusing to acknowledge his own criminal responsibility in the actions. The doctor also considered the conduct that was underlying his prior sexually violent offenses, and that demonstrated that the Respondent experienced current sexual deviant urges towards fifteen-year-old girls. And based on all of this evidence, the doctor concluded that the Respondent suffered from the mental disorder of paraphilia. The doctor also considered the Respondent's scores on the actuarial testing and on the psychological testing and the Respondent's deviant sexual urges and his personality disorder. And that caused the doctor to believe that the Respondent, the Respondent's mental disorder, made it substantially likely that he would sexually re-offend. But despite all this evidence, the trial court dismissed the people's petition stating that the facts that the doctor had testified to were not sufficient to establish probable cause. And the basis of that finding was that the trial court believed that Section 35E of the Act, which its plain language demonstrates is only applicable at the trial phase, was also applicable at the probable cause phase. And then also misunderstood the people's evidence as to whether or not the people relied solely on the Respondent's prior sexually violent offenses to arrive at its conclusion that the Respondent suffered from a mental disorder. And both of these, the misapplication of the law and the misunderstanding of the people's facts were two errors that led to the trial court's dismissal of the petition. Now, Respondent argues that the appellate court incorrectly did not defer to the trial court's credibility finding. But the issue here is not one of credibility. The issue is actually the purely legal issue of whether or not the facts to which Dr. Quackenbush testified were sufficient to establish probable cause. And the appellate court did recount the probable cause standard in its opinion and did recount the evidence that it considered in cross-examination evidence. It recounted this when it was talking about the facts of the case. And that demonstrates that the appellate court was fully aware of all the evidence that was elicited both on direct and cross-examination, but simply disagreed with the trial court's decision that all that evidence in its totality was sufficient to establish probable cause, and the trial court had held otherwise. And the appellate court, looking at the facts to determine whether or not that legal determination was error, can do that de novo. So the issue here is not one of credibility. It's a purely legal issue. In addition, the trial court's factual finding that the doctor simply relied on the fact of the respondent's prior convictions was against the manifest way of the evidence. The doctor did not simply rely on the respondent's prior convictions to determine that he suffered from a mental disorder. The people did not simply present certified copies of the convictions. They presented the testimony of an expert who testified that he relied on his two-hour interview with the respondent, which demonstrated all these facts that the respondent was refusing to take responsibility for his actions, that the respondent had not participated in any treatment since he had been incarcerated, and had since continued to refuse to participate in treatment  The doctor relied on the conduct of the trial court The doctor relied on the conduct underlying the convictions, and then also relied on the fact that the respondent's urges were essentially undeterrable. The respondent committed his second sexually violent offense when he was on probation from his first, and committed his third sexually violent offense when he was on parole from his second. So these are all the factors that the doctor relied on in arriving at his diagnosis. And the trial court's factual finding that he relied solely on the past convictions was against the manifest way of the evidence. If your honors have no questions on the probable cause issue, we would ask this court to affirm the judgment of the appellate court. Thank you. It's wrong just to say that SVP petitions are meant to be civil and because of that civil rules must apply so the state can appeal. The section that I pointed out, section 20, emphasizes that parts of this act are meant to be done under criminal rules. We just don't know which ones. Some it's kind of obvious. It comes right out and says these are criminal rules. But in other parts we have to read the whole act and infer what the legislature had intended. This is why I pointed out certain aspects of the act to suggest that the legislature intended that criminal rules were to apply on the question of whether the state could appeal, meaning that they could not appeal, even though the act is supposed to otherwise be done under civil procedure. On the issue of probable cause on the merits, I emphasize again... Counsel, you're suggesting... I'm sorry, Mr. Chief Justice. Are you suggesting that there's a double jeopardy issue in the case? Not a constitutional double jeopardy issue with the case. Not that, so to speak. But the net result would be the same, yes. That the legislature has not, in effect, given the state the right to appeal so the appellate court doesn't have jurisdiction to hear a state appeal. So in effect it becomes a double jeopardy situation. It's given one party the right to appeal in an interlocutory appeal. It's given the respondent the right to appeal, yes. How does that translate into a denial of any right to appeal to the other side? That by itself, I admit, is not a panacea. It's something we have to read with everything else that's in the act. The parts of the act in which the act unequivocally says the petition shall be dismissed, period. The respondent shall be released from custody, period. All put together, I claim that the state was not meant to appeal this. That the respondent was to just leave, and that would be the end of it. Almost akin to a constitutional double jeopardy, but since this, of course, is statutory, we can't say double jeopardy, so to speak. On the question of probable cause, counsel has just argued, in effect, the same thing as the Second District, that they presented tons of evidence, and respectfully to all, that just isn't the point. It's not what gets presented, it's what gets established. It's what gets found by the trial court. We take an extreme example, and I admit this is very extreme, but it makes the point. Suppose the state had presented tons of evidence on direct, and the doctor had gone on and on saying, yes, I think that Mr. Hardin has this disorder, and he's very dangerous. Now comes time for cross, and cross is done to such a point that the doctor is left saying, you're absolutely right, I made a mistake on direct. I don't think he has a mental disorder anymore. I think we'd be hard pressed to say there's still probable cause, even though appropriate evidence was presented. It has to be all the evidence that comes forth at the hearing, not just what gets presented. That by itself is really almost meaningless compared to what comes out at the end. And in our situation, it's plain that the court just didn't buy the doctor's opinions as a result of what came out on cross. Now, we're left then with just convictions, and the issue of whether mere convictions standing alone are enough to sustain the state's burden at the probable cause hearing. We say no. The trial court said no. The statute is not clear on this. The statute says that mere convictions are not enough for a trial, but says nothing about a probable cause. Well, it's- What mistake did the appellate court make when they assessed both direct and cross and came up with the opposite conclusion as the trial court, namely that it was against the manifest weight of the evidence, looking at the testimony of the doctor for the trial court to determine that there was no probable cause? The appellate court, as I read the appellate court opinion, the appellate court did not emphasize cross at all. The appellate court, when it recited the facts, devoted I think one paragraph, possibly two, to what came out on cross earlier on in the opinion and never referred back to it again. Just said, when it came time for its analysis, said that, in effect, this evidence was presented and that's enough. It makes the same mistake that I'm arguing now is just improper. We can't just rely on what got presented. The appellate court did not really consider the cross, much less the trial court's view of the cross. And of course, this gets into the trial court's in the best position. You can envision a circumstance where a trial court could make a factual error in a case such as this, can't you? If the factual, I can, Mr. Chief Justice, certainly. Factual errors can always be made. What remedy, under your argument, would the state have under those circumstances? They would not. They could not fix it. That's part of our judicial system. That's part of, in a trial, it's the idea of beyond a reasonable doubt. Some people who- You have argued that the legislature intended this to be the way that it would be handled. Is that correct? I have argued that, Mr. Chief Justice. That, in effect, just like- Doesn't it seem rational if the legislature was going to do something that radical? They might have said something about it in the statute. I don't know. Because I think it's, it would be radical for them. It's radical for them to overlook the fact that the state conceivably can ask for a stay of the trial court's order, and not mention of the fact that this dangerous man will be walking the streets while this motion is pending. So I can't answer that. It's just a hole in the statute that isn't addressed either way. Clearly, there appears to be a right to appeal contained in the general statute. In the general? As the civil cases. As in 301, I agree. There's a right for the losing party to appeal. In a civil case of a final judgment, I agree on 301. Is your disagreement here that there was no final judgment in this case? That's one, that's one aspect. I'm also saying that it's not obvious that 301 should apply at all. That 301 presupposes this was a civil case. The question of whether this is meant to be civil or criminal, of course, that's a matter of statutory construction on this point of law. So it's really two problems that I'm saying that it wasn't, on this point it wasn't meant to be civil. If it was meant to be civil, it's not final, so the state still can't appeal it. In any event, the jurisdictional question, I believe, is substantial. And the question on the merits, as well, is also substantial. Should the second district have deferred more to the trial court? I'd be pleased to answer any additional questions that the court might have. Thank you, counsel. Thank you, Mr. Chief Justice. Thank you, your honors. Case number 108-615.